**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| GUSTI ROSEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| BRIDGECREST ACCEPTANCE | ) | |
| CORPORATION and CARVANA, LLC, | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

**COMPLAINT**

On March 1, 2020, Plaintiff Gusti Roseman's vehicle was stolen, through no fault of her own, at her workplace. The vehicle was eventually recovered by the police in Effingham, Illinois. Before Ms. Roseman could retrieve it, in the middle of a global pandemic, and even though Plaintiff was up to date on all required payments, Defendant Bridgecrest Acceptance Corporation ("Bridgecrest") repossessed the vehicle and then set impossible barriers to permit Plaintiff to retrieve it. After fruitless efforts to negotiate the vehicle's return, Ms. Roseman learned that the vehicle's seller, Defendant Carvana, LLC ("Carvana"), had never obtained a completed retail installment contract and security agreement ("RIC") from her. Rather, Carvana assigned a RIC to Bridgecrest that Plaintiff never signed. As such, and after threats by Bridgecrest to sell the vehicle, inflate her account with repossession charges and impound fees, and report her as delinquent to the credit reporting bureaus, Plaintiff files this action seeking relief under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and the common law.

*Parties*

1.      Plaintiff Gusti Roseman is a citizen of the State of Illinois who resides in this district.

2.　　　Defendant Bridgecrest Acceptance Corporation is an Arizona corporation that finances Carvana vehicle purchases throughout the United States.  Bridgecrest maintains a registered agent in the State of Illinois and regularly conducts business with consumers in this district.

3.　　　Defendant Carvana, LLC is an online used car retailer, originally known for its vehicle "vending machines," based in Arizona.  Like Bridgecrest, Carvana maintains a registered agent in the State of Illinois and regularly conducts business with consumers in this district.

### Jurisdiction and Venue

4.　　　This Court has federal question jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331 as Plaintiff's claims arise under a federal statute.

5.　　　Supplemental jurisdiction over the state law claims should be exercised under 28 U.S.C. § 1367(a).

6.　　　Venue is proper in this district under 28 U.S.C. § 1391(b) since Plaintiff resides here and specific activities giving rise to Plaintiff's causes of action occurred here.

### Facts Relevant to All Counts

7.　　　Plaintiff began searching for a vehicle in the summer of 2019 and entered certain financial information online to see where she pre-qualified to purchase a vehicle.

8.　　　After Plaintiff submitted her information, Carvana appeared in her web search.  She shopped for vehicles on Carvana's website, spoke with a Carvana representative over the phone to see how the company's online purchase system worked, and eventually set up a user ID and password to begin the purchase process.

9.　　　Carvana's representative advised Plaintiff that, unless she had an open bankruptcy, it would work to sell her a vehicle based solely on income and banking account verification.

10.　　　In September of 2019, Plaintiff selected a 2018 Dodge Journey, VIN 3C4PDCAB7JT375618 ("subject vehicle"), for purchase from Carvana.

11.     Carvana approved her for purchase with a $400.00 down payment and advised her the vehicle would be ready for delivery in October.

12.     However, Carvana contacted Plaintiff early to tell her the vehicle was "ready" and, since she had a birthday coming up with an expiring driver's license, once she renewed her license she could pick up the vehicle at Carvana's Oakbrook, Illinois vending machine location.

13.     Plaintiff arrived with a friend in Oakbook to pick up the vehicle.

14.     Carvana's representative handed her an envelope and explained she had finished all the necessary paperwork online and her contracts were inside the envelope.  He then instructed her on how to obtain the license plates for the vehicle and sent her on her way in the vehicle.

15.     When Plaintiff examined the paperwork inside the envelope, they contained a specific DocuSign envelope ID: BFF66E0E-CEAF-41D8-B0A0-F0CD46099F9E.

16.     Plaintiff obtained the license plates and began making monthly payments to Bridgecrest as directed.

17.     On or about March 1, 2020, Plaintiff's vehicle was stolen from her employer's parking lot, the Maryville Youth Center.

18.     Plaintiff immediately reported the theft to the Bartlett Police Department and officers arrived on the scene to take witness statements.

19.     On or about March 2, 2020, Plaintiff called both Carvana and Bridgecrest and informed them of the vehicle theft.  Plaintiff asked whether the vehicle was equipped with a tracking or GPS device to assist in locating the vehicle and was informed it had no such device.

20.     Bridgecrest reminded Plaintiff that she was still obligated to pay on the vehicle note, which she did.

21.     On or about March 8, 2020, Bartlett Police informed Plaintiff that the offender had been caught speeding in the stolen vehicle.

22.     On or about March 10, 2020, Plaintiff called Detective Johnson of the Bartlett Police to ask about the location of her vehicle.

23.     Detective Johnson came to Plaintiff's work and informed her the vehicle was located at Foreman's Towing and Repair, 1615 S Banker Street, Effingham, Illinois 62401.

24.     Plaintiff lives in Harvey, Illinois and Effingham is a four-hour train ride away. Therefore, on March 10, 2020, Plaintiff called Foreman's Towing and Repair to advise that the vehicle was hers and that she was making travel arrangements to get to Effingham to pick it up. Plaintiff also requested an itemization of fees Foreman's claimed would be due upon vehicle pick-up, which her employer had agreed to pay since the vehicle had been stolen while she was at work.

25.     However, in the midst of Plaintiff's arrangements, travel precautions were already in effect due to the global pandemic and on March 9, 2020, pursuant to the provisions of Section 7 of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7, Governor Pritzker declared all counties in the State of Illinois a disaster area.

26.     The same day Plaintiff learned where her vehicle was, March 10, 2020, the Illinois Department of Public Health warned, "As we anticipated, the number of cases in Illinois is increasing and now includes the first cases outside of Chicago and Cook County," said IDPH Director Dr. Ngozi Ezike. "The State of Illinois continues to take action to reduce spread of COVID-19 in Illinois and we again want to encourage people to start thinking and preparing now in the event they are not able to go to work, if schools are closed, if public transportation is not available, and how else their lives will be disrupted by this outbreak."

27.     By March 12, 2020, large events were being postponed due to COVID-19.  "The virus is here in Illinois. While it may not be in your community now, we anticipate it will be eventually. We all need to take action now by postponing large events and restricting visits to nursing homes to limit the spread," said IDPH Director Dr. Ngozi Ezike. "Guidance for this novel

virus is changing day by day, sometimes hour by hour, but we want to empower people to think about what they can do to reduce their risk of possible infection, as well as spread of the virus. The state will continue with containment efforts while also implementing mitigation strategies and we're asking for your help in these efforts."

28.     While keeping an eye on the rapidly developing situation involving the pandemic, Plaintiff was working to gather the funds to get to Effingham and pay Foreman's Towing.

29.     On March 16, 2020, Plaintiff called Foreman's Towing, advised she had payment, had purchased an Amtrak ticket, and would be there to pick up the subject vehicle on March 19, 2020.

30.     On March 19, 2020, Plaintiff arrived at Foreman's Towing to retrieve the subject vehicle, having taken a four-hour train ride to get there.

31.     By this time, the number of coronavirus cases was continuing to rise, the State of Illinois had closed public and non-public schools, and non-emergency court hearings had been cancelled.  However, Plaintiff needed her vehicle and had taken all necessary steps to retrieve it.

32.     Foreman's Towing informed Plaintiff that Bridgecrest had repossessed the subject vehicle on March 17, 2020.

33.     Plaintiff immediately called Bridgecrest to ask where the vehicle was and what she needed to do to get it back since she was current on her payments.  Bridgecrest told her the vehicle had been transported after repossession to Louisville, Illinois, another 25 miles away.  Bridgecrest then explained she would need to pay them $860.00 and send the following documents: (a) front and back sides of her driver's license; (b) proof of insurance and registration; and (c) her driving record for the past 39 months.

34.     While Plaintiff could provide her license, insurance, and registration information, she called the Department of Motor Vehicles ("DMV") to obtain her driving records but all

departments had been closed on March 17, 2020 due to COVID-19. Plaintiff informed Bridgecrest that it would be impossible for her to comply with its demands due to the office closures but Bridgecrest said it was required if she wanted her vehicle back.

35.     Plaintiff initially sought help with crime victim's assistance from the State's Attorney's office but on or about March 31, 2020, Plaintiff received a certified mail package from Bridgecrest titled "Notice of Disposition and Our Plan to Sell Property" and she began her search to hire a private attorney.

36.     Bridgecrest's "Notice of Disposition and Our Plan to Sell Property" informed her that the subject vehicle would be sold at a private sale sometime after April 10, 2020, unless she took certain actions.

37.     However, under Governor Pritzker's Executive Order 2020-16, beginning March 27, 2020 and continuing for the duration of the Gubernatorial Disaster Proclamation, the provisions of the Uniform Commercial Code, 810 ILCS 5/9-609, regarding the possession or usability of a vehicle, and the provisions of the Illinois Vehicle Code, 625 ILCS 5/3-114, regarding the repossession of vehicles, were suspended.

38.     Plaintiff called Bridgecrest on several occasions, including but not limited to April 14, 2020 and, while it agreed to lower the towing charges to $535.00, Bridgecrest still refused to authorize the return of the vehicle without the 39-month driving record DMV certification. While the Governor's Executive Order was not to be construed as relieving any individual of the obligation to make payments or comply with any other obligation that an individual may have pursuant to a loan agreement or otherwise, Bridgecrest's continuing sale threats were in contravention of the Executive Order, as self-help repossession activities permitting sale without court order had already been suspended.

39.     To preserve her rights, Plaintiff returned an "Affidavit of Defense" to Bridgecrest, contesting the company's basis for repossession.

40.     Plaintiff hired the undersigned counsel and several letters were exchanged between Bridgecrest's legal department and Plaintiff's attorney to resolve the matter without litigation.

41.     When the parties reached an impasse in their negotiations, Bridgecrest advised Plaintiff's attorney that Plaintiff had given up her right to a jury trial through a form arbitration contract.  Bridgecrest also stated it had the right to self-help repossessession because, "As stated in the Retail Installment Contract ("RIC") which Ms. Roseman signed, it was Ms. Roseman's obligation to 'keep the Property in [her] possession and in good condition and repair.' Ms. Roseman's failure to retrieve her Property, the Vehicle, once she knew of its location, is in violation of this obligation. As the RIC makes clear, if Ms. Roseman violated the RIC, Bridgecrest had a right to 'immediately take possession of the Property by legal process or self-help.'"

42.     Now that Bridgecrest had articulated the basis for the repossession, Plaintiff consulted the paperwork that had been provided to her by Carvana.  No such language appeared in the RIC in her possession.  Further, Plaintiff had never seen nor did she recall signing an arbitration contract during the September 2019 vehicle transaction.

43.     Bridgecrest provided the purported RIC and arbitration agreement for Plaintiff's review and Plaintiff immediately noticed: (a) the DocuSign envelope identification number was different than the documents Carvana provided her when she picked up the vehicle; and (b) she did not sign nor initial the documents as both the initials and signature on the Bridgecrest documents were not Plaintiff's electronic signature/initials.

44.     Plaintiff has a DocuSign account in which her completed contracts are saved. Plaintiff reviewed her DocuSign account and noticed there was no completed Carvana contract.  She

called DocuSign and spoke to several representatives, each of which confirmed the Carvana contract

had not been finalized nor executed.

45.     On May 27, 2020, Plaintiff informed Bridgecrest that she was revoking acceptance of

the vehicle.  Without a meeting of the minds on all contractual terms and given Plaintiff's forged

electronic signature, Plaintiff seeks a court order confirming any purported contract or arbitration

agreement as void, releasing her from any contractual liability, and denying any motion to compel

arbitration.

## COUNT I
### *Violations of the Truth in Lending Act Against Defendant Carvana, LLC*

46.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-

45 as if set forth fully in this Count.

47.     The September 23, 2019 interaction between Carvana and Plaintiff was a consumer

transaction as the subject vehicle was to be used for personal, family or household purposes.

48.     Carvana is a "creditor" under TILA because it both: (1) regularly extends, whether in

connection with loans, sales of property or services, or otherwise, consumer credit which is payable

by agreement in more than four installments or for which the payment of a finance charge is or may

be required; and (2) is the person to whom the debt arising from the consumer credit transaction is

initially payable on the face of the evidence of indebtedness or, if there is no such evidence of

indebtedness, by agreement.

49.     The TILA required Carvana (as the seller/creditor) to disclose the terms of credit to

Plaintiff (the buyer/consumer) as part of the consumer transaction involving the sale and financing

of the subject vehicle.

50.     Regulation Z specifies how Carvana's required disclosure should be made: "(a) Form

of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and

conspicuously in writing, in a form that the consumer may keep; (b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17.

51.     Carvana violated Regulation Z when it failed to make the required disclosures to Plaintiff, in writing, in a form that she could keep before consummation of the transaction in which Plaintiff provided a down payment in exchange for possession of the subject vehicle.

52.     Carvana only gave Plaintiff a partial RIC ("Contract 1"), identified with: DocuSign Envelope ID: BFF66E0E-CEAF-41D8-B0A0-F0CD46099F9E.

53.     Contract 1 in Plaintiff's possession is 1 page, instead of 6 pages, and is not initialed. *See* Exhibit A.

54.     When Bridgecrest informed Plaintiff that she had agreed to specific default and arbitration provisions that were nowhere to be found among Plaintiff's documents, Bridgecrest provided Plaintiff a full RIC ("Contract 2"), identified with: DocuSign Envelope ID: 04C558B4-EF78-4678-A5B6-73B078A9CB64. *See* Exhibit B.

55.     Contract 2 is 6 pages and is initialed but Plaintiff disputes that those are her initials and states that such initials do not match her DocuSign account electronic initials.

Gusti Roseman's **Authentic** DocuSign Initials and Signature:

**Disputed** DocuSign Initials and Signature Sent to Bridgecrest from Carvana:

RSSIMVLFLZIL 7/1/2017

Page 1 of 6

Customer Signature

9

56.     Had Plaintiff been provided with the operative contract prior to consummation as required under TILA and Regulation Z, it would have been initialed by Ms. Roseman using her DocuSign initials/signature and it would have been available to her for viewing, printing, and/or download within her DocuSign account.

57.     Defendant Carvana did not provide Contract 2 to Plaintiff electronically or in any other format and Contract 1 bears no indicia of agreement to terms by Plaintiff.

58.     Defendant's failure caused injury to Plaintiff.  Plaintiff was confronted with terms she never agreed to (such as arbitration and default provisions).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant Carvana, LLC and award damages as follows:

(A)     Statutory damages under the TILA, 15 U.S.C. § 1641;

(B)     Attorney's fees, litigation expenses and costs incurred in bringing this action; and

(C)     Any other relief this Court deems appropriate and just under the circumstances.

## COUNT II
### *Request for Declaratory Judgment Against All Defendants*

59.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-45 as if set forth fully in this Count.

60.     Under 28 U.S.C. § 2201, the Declaratory Judgment Act allows any federal court to "declare the rights and other legal relations of any interested party seeking such declaration" and that declaration has the full force of a final judgment.

61.     Plaintiff seeks an order declaring:

A)      "Contract 2" (RIC DocuSign Envelope ID: 04C558B4-EF78-4678-A5B6-73B078A9CB64) null and void;

B)      "Contract 1" (RIC DocuSign Envelope ID: BFF66E0E-CEAF-41D8-B0A0-F0CD46099F9E) void or voidable as never assigned to Bridgecrest by Carvana;

C)  No binding arbitration contract exists between the parties;

D)  Plaintiff did not default in her obligations to either Defendant;

E)  Plaintiff effectively revoked acceptance of the subject vehicle; and

F)  In the absence of Plaintiff's default, all collections and negative credit reporting must cease.

62.  As required under 28 U.S.C. § 2201, this Court has subject matter jurisdiction because there is an actual controversy between Plaintiff and both Defendants with respect to their rights and purported obligations arising from the September 2019 vehicle transaction and March 2020 vehicle repossession.

63.  The Plaintiff and both Defendants have adverse legal interests with sufficient immediacy and the threat of financial and credit damage further warrants issuance of an order. Given the nearly $34,000 sales price for the subject vehicle, not to mention the importance of protecting Plaintiff's credit history and the diminishing value of the subject vehicle if indefinitely held, issuance of a declaratory judgment in this action will serve a useful purpose in clarifying the legal obligations and relationships among the parties.

64.  Failure to issue an order regarding responsibility under the terms of any purported vehicle contract could subject Plaintiff to a separate deficiency action proceeding as the value of the vehicle is less than the purported obligation to pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants Carvana, LLC and Bridgecrest Acceptance Corporation and order as follows:

(A)  Enter judgment according to the declaratory relief sought;

(B)  Costs incurred in bringing this action; and

(C)  Any other relief this Court deems appropriate and just under the circumstances.

### COUNT III

11

### *Violations of the Illinois Consumer Fraud Act Against All Defendants*

65.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-45 as if set forth fully in this Count.

66.     Carvana committed deceptive and unfair practices in contravention of the ICFA, 815 ILCS 505/2.

67.     On some date after September 23, 2019, Carvana apparently determined that Contract 1, the contract it gave to Plaintiff in partial form when she went to pick up the subject vehicle, had not been executed on DocuSign and was not complete.

68.     Therefore, on some date after September 23, 2019, Carvana completed Contract 2 without Plaintiff's knowledge or consent to assign all necessary paperwork required by Bridgecrest.

69.     Contract 2 contains an electronic signature and initials that were not drawn or approved by Plaintiff.

70.     Forgery of documents, whether in wet ink or electronically, is a criminal offense and committing forgery violates the public policy of the State of Illinois.  Forgery is also immoral, unethical, oppressive or unscrupulous and causes substantial injury to consumers generally.

71.     In this case, forgery of electronic documents caused Plaintiff's vehicle to be repossessed under a default provision she never agreed to.  By failing to provide her with the contractual documents it sought to obligate her to, Carvana stripped Plaintiff of the right to know what she had agreed to with respect to the vehicle purchase, a concrete and particularized harm.

72.     Carvana misrepresented the signature appearing on Contract 2 as Plaintiff's own, a deceptive act, done with the intention that Plaintiff and Bridgecrest rely on the signature as authentic and therefore binding.

73.     Carvana also violated Section 2 of the ICFA by failing to comply with public policy as articulated in Illinois' Motor Vehicle Retail Installment Sales Act ("MVRISA").  For example,

MVRISA, 815 ILCS 375/5, requires sellers like Carvana to provide consumer purchasers like Plaintiff with specific disclosures as to the RIC's terms.

74. Carvana provided Plaintiff with an incomplete copy of Contract 1 and no copy of Contract 2. Among other things, Carvana did not disclose to Plaintiff the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

75. Bridgecrest also committed deceptive and unfair practices in contravention of the ICFA, 815 ILCS 505/2.

76. Among other things, Bridgecrest: (a) repossessed the subject vehicle in the middle of a global pandemic even though Plaintiff was up to date on payments and did not default by taking several days to travel by Amtrak to Effingham, Illinois to pick up the vehicle when it was securely stored; (2) misrepresented its right to possession of the subject vehicle and its right to sell the vehicle, despite the issuance of an Executive Order staying self-help repossessions; (3) demanded Plaintiff perform an impossible act (obtain a 39-month driving record) to retrieve the subject vehicle; and (4) charged Plaintiff for fees and costs it did not have to incur as Plaintiff had already made arrangements to retrieve the subject vehicle.

77. All of Defendants' unfair acts and deceptive representations and omissions of material fact were committed in the course of Illinois trade and commerce.

78. Plaintiff incurred rental car charges after the repossession, is now threatened with a negative credit rating, and spent many hours working to resolve this matter to avoid litigation. Bridgecrest prevented her from making online payments to get the vehicle back and threatened her with a deficiency balance. The stress and emotional toll of being without a vehicle during the height of the uncertainty with COVID-19 cannot be overemphasized. Plaintiff traveled by Amtrak, risking her health, only to learn the vehicle had been repossessed without an occurrence of default. In these

uncertain economic times, Plaintiff lost the use of her only vehicle and then learned that she was defrauded by forgery.

79.     Defendants' conduct of willful or, at minimum, reckless indifference to Plaintiff's rights warrants punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants Carvana, LLC and Bridgecrest Acceptance Corporation and award damages as follows:

(A)     Actual and punitive damages under the ICFA;

(B)     Declaratory and injunctive relief as appropriate;

(C)     Attorney's fees, litigation expenses and costs incurred in bringing this action; and

(D)     Any other relief this Court deems appropriate and just under the circumstances.

## COUNT IV
### Revocation of Acceptance Against All Defendants

80.     Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1-45 as if set forth fully in this Count.

81.     Section 2-608 of the Illinois Commercial Code provides that a buyer may revoke her acceptance of a lot or commercial unit whose non-conformity substantially impairs its value.

82.     On May 27, 2020, Plaintiff revoked acceptance of the subject vehicle and provided notice of same.

83.     The purchase of the vehicle was subject to terms Plaintiff had never agreed to because Carvana failed to provide the contractual terms before obligating Plaintiff to monthly payments and assignment to Bridgecrest.

84.     Defendants' failure to convey purchase, default, and arbitration terms to Plaintiff provides a legitimate basis for revocation.

85.     Additionally, the subject vehicle has been held by Bridgecrest's repossession agent

and/or auction vendor for nearly 3 months as of the date of filing this complaint, its condition is

unknown to Plaintiff but can be reasonably assumed to be diminished since March 1, 2020, having

been driven and/or towed multiple times to and from various repossession company yards across

the State of Illinois.

86.     Plaintiff's revocation occurred almost immediately after discovery of the fraudulent

contract switch and any diminution in value to the subject vehicle was not the fault of Plaintiff given

that the vehicle was in Bridgecrest's agents' possession and Plaintiff had tried to retrieve it back on

March 19, 2020.

87.     Plaintiff had no reason to discover the basis for her revocation until Bridgecrest sent

her Contract 2 that Carvana assigned it.

88.     Plaintiff's faith in the vehicle and her dealings with Defendants have been

irrevocably shaken.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor

and against Defendants Carvana, LLC and Bridgecrest Acceptance Corporation and order as

follows:

(A)     Enter an order confirming Plaintiff's rightful revocation of acceptance and
        cancellation of the contract under Sections 2-608 of the Illinois Commercial Code;
        and

(B)     Any other relief deemed just and reasonable.

## *Plaintiff Demands Trial By Jury*

Respectfully submitted,

By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys

Stacy M. Bardo
Bardo Law, P.C.
22 West Washington Street, Suite 1500
Chicago, Illinois 60602

Tel: (312) 219-6980
Fax: (312) 219-6981
E-mail: stacy@bardolawpc.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendants take affirmative steps to preserve all recordings, data, documents, electronic information, and all other tangible things that relate to Plaintiff and the events described herein.  If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials.


By: /s/ Stacy M. Bardo
One of Plaintiff's Attorneys