# EXHIBIT "B"

DocuSign Envelope ID: 04C558B4-EF78-4678-A5B6-73B078A9CB64

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

IL-102 7/1/2017

# RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Gusti M Roseman | No. | 2000386420 |
| 63 PIERCE RD | 14608 Center Ave | Date | 09/23/19 |
| WINDER GA 30680-7280 | Harvey IL 60426 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 400.00 . |
|---|---|---|---|---|
| 18.93 % | $ 13,327.59 | $ 19,576.25 | $ 32,903.84 | $ 33,303.84 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 457.00 | monthly beginning 10/24/19 |
| 1 | $ 456.84 | 09/24/25 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the payment due on installments in excess of $200.00 or $10.00 on installments of $200.00 or less.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2018 | Dodge | Journey | Sport Utility | 3C4PDCAB7JT375618 | 29222 |

☐ New
☒ Used
☐ Demo

Other: N/A

### FOR USED VEHICLES ONLY

Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.

**ATTENTION CONSUMER: SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**

**ATENCIÓN CONSUMIDOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO SEGÚN ESTOS TÉRMINOS:**

1. N/A   2. N/A   3. N/A

X N/A   X N/A   X N/A
Buyer Signs (Date)   Buyer Signs (Date)   Buyer Signs (Date)

DocuSign Envelope ID: 94C558B4-EF78-4678-A5B6-73B078A9CB64
Case: 1:20-cv-03791 Document #: 1-2 Filed: 06/29/20 Page 3 of 12 PageID #:21

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Description of Trade-In

| | | | |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 19,576.25 plus finance charges accruing on the unpaid balance at the rate of 18.93 % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at 18.93 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Additional Charge.** You agree to pay an additional charge of $ N/A that will be ☐ paid in cash.
☐ financed over the term of the Contract.

**DOCUMENTARY FEE.** ☐ You agree to pay a documentary fee of $ N/A .
**DOCUMENTARY FEE.** A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150.00. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150.00 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: N/A N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

*[This area intentionally left blank.]*

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1,328.25 ) | $ | 17,428.25 |
| b. | Service Contract, paid to: Carvana | $ | 1,600.00 |
| c. | **Cash Price** (a+b) | $ | 19,028.25 |
| d. | Trade-in allowance | $ | 0.00 |
| e. | Less: Amount owing, paid to (includes m): N/A | $ | 0.00 |
| f. | Net trade-in (d–e; if negative, enter $0 here and enter the amount on line m) | $ | 0.00 |
| g. | Cash payment | $ | 400.00 |
| h. | Manufacturer's rebate | $ | 0.00 |
| i. | Deferred down payment | $ | 0.00 |
| j. | Other down payment (describe) N/A | $ | 0.00 |
| k. | **Down Payment** (f+g+h+i+j) | $ | 400.00 |
| l. | **Unpaid balance of Cash Price** (c–k) | $ | 18,628.25 |
| m. | Financed trade-in balance (see line f) | $ | 0.00 |
| n. | Paid to public officials, including filing fees | $ | 253.00 |
| o. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| p. | Optional ERT Fee Paid to N/A | $ | 0.00 |
| q. | To: Gap Coverage | $ | 695.00 |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | **Total Other Charges/Amts Paid** (m thru y) | $ | 253.00 |
| aa. | **Prepaid Finance Charge** | $ | 0.00 |
| bb. | **Amount Financed** (l+z–aa) | $ | 19,576.25 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

DocuSign Envelope ID: 94C558B4-FF78-4678-A5B6-73B078A9CB64
Case: 1:20-cv-03791 Document #: 1-2 Filed: 06/29/20 Page 4 of 12 PageID #:22
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☐ None

Premium $ ___N/A___   Term ___N/A___
Insured ___N/A___

**Credit Disability**

☐ Single  ☐ Joint  ☐ None

Premium $ ___N/A___   Term ___N/A___
Insured ___N/A___

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

___N/A___ ___N/A___
**By:** **Date**

___N/A___ ___N/A___
**By:** **Date**

___N/A___ ___N/A___
**By:** **Date**

**Property Insurance.** You must insure the Property. **You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ ___1,000___. If you get insurance from or through us you will pay $ ___N/A___ for ___N/A___ of coverage.

This premium is calculated as follows:

☐ $ ___N/A___ Deductible, Collision Cov.      $ ___N/A___
☐ $ ___N/A___ Deductible, Comprehensive      $ ___N/A___
☐ Fire-Theft and Combined Additional Cov.      $ ___N/A___
☐ ___N/A___      $ ___N/A___

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

*[This area intentionally left blank.]*

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term ___48 months___
Price $ ___1,600.00___
Coverage ___Carvana Vehicle Protection___

☒ **Gap Waiver or Gap Coverage**
Term ___72 months___
Price $ ___695.00___
Coverage ___Gap Coverage___

☐ ___N/A___
Term ___N/A___
Price $ ___N/A___
Coverage ___N/A___

**By:** Gusti M Roseman      09/23/19
**Date**

___N/A___ ___N/A___
**By:** **Date**

___N/A___ ___N/A___
**By:** **Date**

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

DocuSign Envelope ID: 94C558B4-EF78-4678-A5B6-73B078A9CB64
Case: 1:20-cv-03791 Document #: 1-2 Filed: 06/29/20 Page 5 of 12 PageID #:23
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Illinois and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if the following occurs (except as prohibited by law):

♦ You fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay our fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees incurred in the collection or enforcement of the Contract. If a judgment is entered against you, you will pay any court costs the court awards us.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Right to Reinstate.** If you have paid an amount equal to 30% or more of the Total of Payments or Total Sale Price at the time of repossession, you may, within 21 days, reinstate this Contract and redeem (get back) the Property from us by tendering in a lump sum (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of reinstatement, without acceleration; (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) all reasonable costs and fees incurred by us in retaking, holding, and preparing the Property for disposition and in arranging for the sale of the Property. Tender of payment and performance pursuant to this limited right of reinstatement restores to you your rights under this Contract as though no default had occurred. However, you have the right to reinstate this Contract and recover the Property from us only once on this Contract.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract, subject to any right to reinstate that you may exercise as described in the *Right to Reinstate* section. Those remedies include:

♦ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
♦ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
♦ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
♦ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
♦ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
♦ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the Vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

♦ You must pay this Contract even if someone else has also signed it.
♦ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
♦ We may release any security and you will still be obligated to pay this Contract.
♦ If we give up any of our rights, it will not affect your duty to pay this Contract.
♦ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTIES SELLER DISCLAIMS**

**If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.**

**If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.**

The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

### Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

♦ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
♦ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
♦ You agree not to remove the Property from the U.S. without our prior written consent.
♦ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
♦ You will pay all taxes and assessments on the Property as they become due.
♦ You will notify us with reasonable promptness of any loss or damage to the Property.
♦ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

DocuSign Envelope ID: 94C558B4-FF78-4678-A5B6-73B078A9CB64
Case: 1:20-cv-03791 Document #: 1-2 Filed: 06/29/20 Page 6 of 12 PageID #:24

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

### Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.** 1. IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

2. IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

*[This area intentionally left blank.]*

### Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |

Signature of Third Party Owner (NOT the Buyer)

**NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION**

*[This area intentionally left blank.]*

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Acknowledgment for Electronic Signatures

[X] **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: Gusti M Roseman      Date: 09/23/19

By: N/A      Date: N/A

By: N/A      Date: N/A

**CO-BUYER.** A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle or (2) is a parent or spouse of the Buyer or (3) will be listed as an owner on the Vehicle's title. By signing below, you confirm that you will actually receive possession of the Vehicle or will use it or that you are a parent or spouse of the Buyer or that you will be listed as an owner on the Vehicle's title, you agree to be primarily obligated under this Contract and you consent to the Seller having a security interest in the Vehicle.

*[This area intentionally left blank.]*

NOTICE TO THE BUYER. 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.
**By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.**

**RETAIL INSTALLMENT CONTRACT**

**Buyer**

By: Gusti M Roseman      Date: 09/23/19

By: N/A      Date: N/A

By: N/A      Date: N/A

**Seller**

By: CARVANA, LLC      Date: 09/23/19

**Guarantor.** A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer or any co-buyer.
Guarantor Signature:

N/A      N/A
Date

Address:

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the creditor having a security interest in the Vehicle.

**Assignment.** This Contract and Security Agreement is assigned to
N/A
_____,
the Assignee, phone _____N/A_____. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
[ ] This Assignment is made with recourse.

**Seller**

By: N/A      Date:

DocuSign Envelope ID: 04C558B4-EF78-4678-A5B6-79B078A9CB64
Case: 1:20-cv-03791 Document #: 1-2 Filed: 06/29/20 Page 8 of 12 PageID #:26
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf
- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

DocuSign Envelope ID: 94C558B4-FF78-4678-A5B6-73B078A9CB64

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

COPY VIEW

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) Advertisements, promotions or oral or written statements related to the Contract.
(f) The financing terms.
(g) Your credit applications.
(h) The origination and servicing of the Contract.
(i) The collection of amounts you owe us.
(j) Any repossession, or replevin, of the vehicle.
(k) Your personal information.
(l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a notice in writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN). You may email the notice to arbitrationoptout@carvana.com or you may mail it to us at:** Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281. **Emailed notices must be received by 11:59pm, Arizona time, on the 30th day from the contract date. If mailed, it must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration between you and us.**

Selection of Arbitration Administrator. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

Location of Hearing. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

No Class Action or Private Attorney General Action. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

Notice and Cure; Special Payment: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

Fees and Expenses. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

> (1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
> (2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
> (3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

<u>Applicable Law, Award of Arbitrator and Right to Appeal.</u> Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

<u>Miscellaneous</u>. This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

_____  
Customer Signature

_____  
Customer Signature

By: _____  
Authorized Signature

Date: _____09/23/19_____

**ARBITRATION ADMINISTRATORS**

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsADR.com
(800) 352-5267